PEOPLE v. AMERICAN LOAN & TRUST CO.

In re BURROWS.

(Supreme Court, Appellate Division, First Department. March 6, 1896.)

TRUST FUND—SPECIFIC PLEDGE.

    M., as receiver of decedent's estate, sued a trust company to recover certificates of stock which he alleged had been wrongfully pledged by the executor. Judgment went against him, and, pending appeal, it was stipulated, under the sanction of the court, that cash should be substituted for the stock, and held by the company subject to the same lien, if any, which

it had on the stock; and that, in the event of plaintiff's ultimate success in the suit, the company should return the cash on demand without interest. After the money had been paid, and the stock withdrawn, the trust company became insolvent, and a receiver was appointed. Final judgment was rendered declaring that the company never had any lien on the stock, and that M. was entitled to the same, or to the money deposited in lieu thereof. *Held* that, as the fund was a specific pledge, to be returned in case M. finally succeeded, he was entitled to the same as against creditors of the trust company. O'Brien, J., dissenting.

Appeal from special term, New York county.

Application by Lorenzo Burrows, as receiver of the estate of Roswell S. Burrows, deceased, for an order directing J. Edward Simmons, as receiver of the American Loan & Trust Company, to pay a sum of money deposited with said company. From an order granting the application, said Simmons appeals. Affirmed.

The following statement is by O'BRIEN, J.:

In 1884, Charles H. Moore was the receiver of the estate of Roswell S. Burrows, deceased. He has since died, and the petitioner here succeeded him as such receiver. In that year Mr. Moore commenced an action against the American Loan & Trust Company to recover certificates of the capital stock of the Niagara Falls International Bridge Company, then held by the said American Loan & Trust Company in pledge. The latter defended the action, and thus an issue arose between the receiver and the trust company as to who was legally entitled to the possession of the certificates. Judgment was rendered in that suit in favor of the trust company. Pending appeal to the court of appeals, Moore, the receiver, thereafter obtained an order of court allowing him to enter into a stipulation which was made between the parties on October 21, 1887, as follows: "The said receiver shall exchange with said trust company cash to the amount of the claim of said defendant as established by the judgment herein, with interest and all the costs awarded at special or general term for the certificates of bridge stock, and the power of sale and transfer accompanying the same, now held by the said trust company. Said cash to be held by the said trust company subject to the same lien, if any, that it may be ultimately decided in this suit that the trust company has on the said stock, and, in case judgment herein is affirmed by the court of appeals, the said trust company may apply such money to the payment of its said claim and costs to the discharge of said loan. And if the plaintiff shall succeed in this suit, and obtain the judgment of this court, determining that he is entitled to said stock, then the said trust company, upon the entry of such judgment, and upon demand, will return said cash without interest to the receiver, and at the same time, and under the same circumstances, shall deliver to the receiver the note and other papers relating to the loan for which the said defendant now holds said stock as collateral." On the same day the trust company delivered to Moore the certificates of stock, and the latter deposited the money in question with the trust company, and took a receipt therefor. Thereafter the trust company became insolvent, and Simmons was appointed its receiver, and on or about the 21st of July, 1892, Moore served upon Simmons a notice of the deposit of this money, and of his claim that it was held as a pledge, and that neither the trust company nor its receiver had any "right to mingle the said money so deposited in pledge with the general assets of the company." Subsequently Moore died, and Lorenzo Burrows was appointed receiver in his stead. Afterwards a judgment was recovered in the action of Burrows as receiver against the American Loan & Trust Company, wherein it was adjudged "that the plaintiff, as the receiver of the estate of Roswell S. Burrows, deceased, was entitled to the certificates of stock, and to the said sum deposited in lieu thereof."

The trust company was incorporated by special act of the legislature of this state, and section 3 of said act provides: "In case of the dissolution of said company * * * the debts due of the company as trustee and guardian, receiver or depositary of moneys in court and savings bank funds shall have a preference." Laws 1884, p. 326. The trust company carried on a general

banking business from October, 1887, when said deposit was made, until Mr. Simmons was appointed as receiver on March 7, 1891. When the deposit in question was made, the money was not kept separate, but was mingled with the funds of the company generally. At the time when Mr. Simmons, as receiver, took possession of the assets of the company, there was on hand the sum of $31,793.89 in cash. There was then no special sum of money set apart to meet the claims asserted in the action of said Moore. The amount of the indebtedness of the company to which by the terms of the charter preference was expressly given was $704,840.10. In addition, there are claims to the amount of $400,000. The principal of the preferred claims has been paid in full, but the receiver has not now in his hands a sufficient amount of money to pay the interest, and nothing whatever has been paid upon the unpreferred claims. The receiver of the estate of Burrows petitioned this court for an order that his claim be "paid in full in preference to the claims of any general creditor upon the funds or assets in the hands of said Simmons as receiver aforesaid." The receiver of the trust company opposed this motion upon the ground that the petitioner was not entitled to such preference, either by reason of the character of the transaction out of which the claim arose or of the provisions of the charter of the trust company. An order was, however, made directing such payment absolutely, and from that order Mr. Simmons, as receiver, has appealed to this court.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

David Willcox, for appellant.
John Cunneen, for respondent Burrows.

INGRAHAM, J. The American Loan & Trust Company was a trust company incorporated under an act of the legislature of this state passed June 1, 1872, and known as "Chapter 868 of the Laws of 1872" [amended by Laws 1882, c. 391], doing business in the city of New York. On the 15th day of March, 1884, it made a loan of $25,-000 to one Mary Burrows Smith, and said Mary Burrows Smith delivered to the said trust company a certain promissory note, wherein it was stated that for value received the said Mary Burrows Smith and one Albert S. Warner, as executor of Roswell S. Burrows, jointly and severally promised to pay to the American Loan & Trust Company $25,000, with interest; and to secure the payment of the said note the said Warner delivered to the trust company certificates of 300 shares of the stock of the Niagara Falls International Bridge Company, the property of the said estate, held by him in trust as such executor; and at the time the said trust company received the said stock it was well known to said trust company that the said certificates of stock were the property of the estate of the said Burrows, deceased, and were held by said Warner in trust, as executor of said estate, and as part of the assets of said estate. Subsequently there was repaid of the said loan certain sums of money, reducing the principal of the said loan to $17,067.64, and upon such payment there was returned to said Warner by said trust company certificates for 100 shares of the capital stock of the bridge company; and on October 21, 1887, the said trust company held 200 shares of the capital stock of the bridge company, and there was due upon said loan the said sum of $17,067.64. Warner was removed as executor, and one Moore was appointed receiver of the property, who, on the 4th day of September, 1884, filed his

bond, and entered upon the discharge of his duties as such receiver. Moore subsequently died, and the respondent was appointed in his place as receiver, and qualified on the 9th of January, 1894. Subsequent to the appointment of Moore as receiver he demanded of the trust company the return of the certificates of stock held by it as security for the said loan as the property of the estate, and, the trust company having refused to return such stock, an action was commenced in the supreme court by Moore, as receiver, against the trust company, to recover the possession of the said stock as the property of the estate, it being claimed by said Moore that the said certificates of stock had been illegally pledged by Warner to secure the payment of the debt of the said Mary Burrows Smith. It seems that while such action was pending, and before it was finally determined, and on or about the 21st of October, 1887, an order was entered in the action in which said Moore was appointed receiver, whereby he was authorized and directed to enter into a stipulation with such of the persons or corporations who held the bridge stock "to exchange cash to the amount of their respective claims against the estate for the bridge stock held by them as pledgees to secure payment of the same, such cash to be held by them subject to the same lien, if any, that it may be ultimately decided in the suit now pending between such pledgee and the receiver that the pledgee has on the stock, and, in case such is established, that the pledgee may apply such money in discharge of the lien, but otherwise to return the same to the receiver, such exchange to be without prejudice to and in no wise to affect such suit, but that the same may be conducted to final judgment, and on appeal, if an appeal be taken by either party, with the same force and effect and in the same manner in all respects as if such exchange was not made." And in pursuance of such order the said Moore and the said trust company entered into a stipulation entitled in the action wherein Moore was plaintiff and the trust company defendant, by which it was agreed that the said Moore, as receiver, "shall exchange with said trust company cash to the amount of the claim of said defendant as established by the judgment herein, with interest and all the costs awarded at special or general term, for the certificates of bridge stock, and the power of sale and transfer accompanying the same, now held by the said trust company; said cash to be held by the said trust company subject to the same lien, if any, that it may be ultimately decided in this suit that the trust company has on the said stock; and that, in case judgment herein is affirmed by the court of appeals, that the said trust company may apply such money to the payment of its said claim and costs to the discharge of the said loan; and that, if the plaintiff shall succeed in this suit, and obtain the judgment of this court, determining that he is entitled to such stock, then that the said trust company, upon the entry of such judgment, and upon demand, will return said cash, without interest, to the receiver." And in pursuance of such stipulation the said Moore, as receiver, paid to the trust company the sums of $17,067.64 and $185.44, and took from the said trust company a receipt as follows:

"Charles H. Moore, as Receiver of the Estate of R. S. Burrows vs. The American Loan and Trust Company. Received, New York, October 21, 1887, from the plaintiff in the above-entitled action, $17,067.64, deposited in lieu of two hundred shares (200) of the stock of the Niagara Falls International Bridge Company, and $185.44 costs, pursuant to the stipulation bearing date this day, made, signed, and delivered in this action.

"American Loan & Trust Company,
. "By W. D. Snow, Secretary."

It appears that subsequent to the death of Moore and the appointment of the respondent as receiver, the said respondent was substituted as plaintiff in the action between Moore and the trust company, and that final judgment was entered in that action, whereby it was adjudged that the delivery of the certificates of stock of the bridge company by said Warner to the trust company as a pledge to secure the payment by said Mary Burrows Smith to the said trust company of the moneys that it loaned and advanced to her was a violation of his duty as executor; that the said trust company, by receiving from the said Warner, as executor, the said stock of the bridge company, assets of his testator, knowing that he was depositing the same in pledge for the payment of the debt of a third party, and in violation of his duty, is to be adjudged as conniving with the said executor, and that the said trust company acquired no title to or lien upon the said certificates; and that the plaintiff was entitled to judgment directing that the defendant Simmons, as receiver of the trust company, deliver to the said plaintiff, as receiver of the estate of Burrows, the said certificates for 200 shares of the capital stock of the bridge company. And it was thereby adjudged that the American Loan & Trust Company acquired no title to nor lien upon the said certificates, and that the plaintiff, as receiver of Burrows, was entitled to the said certificates, and to the said sum of money deposited in lieu thereof, and that plaintiff recover of the defendant Simmons, as receiver, his costs. This latter judgment was entered after the appointment of Simmons as receiver of the trust company, and he seems to have been substituted before the entry of judgment as the defendant in the action in place of the trust company that had been dissolved.

It having thus been adjudged, in an action in which the appellant, as receiver of the trust company, was a party, that the trust company never acquired any title to or lien upon the said bridge stock, it would seem to be clear that if the bridge stock had remained in the possession of the trust company, and had been received by Simmons upon his appointment as receiver of that company, the respondent would have been entitled to an order directing Simmons to deliver that stock to him as receiver. From this judgment it conclusively appears that the trust company never was the owner of the stock, and never had acquired a lien thereupon, or right to the possession thereof; that it at all times remained the property of the estate of which the respondent is receiver, and that such estate at all times was the owner and entitled to the exclusive possession thereof; that the possession of the trust company was wrongful, and without right; that the estate of Bur-

rows at all times was its owner, and entitled to its possession. The fact that a judgment had been entered by which it was held that the trust company had such an interest in the stock that it was entitled to retain possession thereof, which judgment was subsequently reversed, gave the trust company no title to the stock while such judgment remained in force, so that during that time the trust company could lawfully dispose of the stock; for the final judgment that was entered adjudged that no such title or right to possession had ever vested in the trust company. Such erroneous judgment was absolutely without force, and, as no proceedings took place under it, it was ineffectual for any purpose to affect the rights of the parties. The trust company thus being in possession of the stock, the property of the estate of which the respondent was receiver, and of which such estate was entitled to the possession, the representative of the estate and the trust company entered into the stipulation before mentioned, by which a sum of money was exchanged with said trust company for the certificates of the bridge stock, and said sum of money was held by the said trust company subject to the same lien, if any, that it might be ultimately decided the trust company had on the stock, with the further agreement that, in case the judgment of the court should ultimately decide that the trust company had no lien or right of possession to said stock, that the said trust company would "return said cash, without interest, to the receiver." This delivery of money to the trust company gave to that money no greater title to that money than it had to the stock. It had no right to apply such sum of money to the general uses of the company. On the contrary, it was clearly bound to hold it as a trust fund, and subject to the determination by the final judgment in the action between the estate of Burrows and the trust company as to the right of possession of the stock. Such money no more became the property of the trust company than did the stock that it held, the title to which was in dispute. Nor is there any evidence to show that the trust company violated this covenant, and actually used this money; for at the time the receiver took possession a sum of money in cash largely in excess of that deposited and substituted for the stock came into the possession of the receiver, and it does not appear that at any time prior to the appointment of a receiver the trust company did not have in its actual possession this sum of money. The mere fact that it was deposited in the trust company's general account, and was not kept separate, is unimportant. It was bound to keep this specific sum of money to await the determination of the final judgment in the action between the receiver of the estate and the trust company, and that sum of money was on hand and in its possession when the appellant was appointed receiver. The relation of debtor and creditor never existed as between the respondent as receiver and the trust company. The trust company was never a debtor to the respondent for this sum of money, but the trust company had held this bridge stock, claiming a lien upon it, and subsequently held this sum of money that had been exchanged for the bridge stock, claiming a lien upon it; and

the fact that the trust company was not to pay interest upon this sum of money if it should be ultimately determined that it had no lien upon the bridge stock or its substitute (this sum of money) shows clearly that it was never the intention of the parties that the money was to be used by the trust company, but rather that it was to be held by it as a specific pledge to be returned in case the estate should ultimately succeed. It seems entirely clear, therefore, that neither the trust company nor the appellant, as receiver, has acquired any interest in or right to this sum of money, and that, as between the respondent, as receiver, and the trust company or its creditors, either general or preferred, the respondent was entitled to the money.

We think, therefore, that the order was clearly right, and that it should be affirmed, with $10 costs and disbursements.

VAN BRUNT, P. J., and BARRETT and RUMSEY, JJ., concur.

O'BRIEN, J. (dissenting). The certificates of stock for which the money was substituted were not deposited with the trust company by Burrows or by his receiver, Moore, but were held by that company as security for a debt. Moore, claiming the stock as the property of the estate of Burrows, brought his action for the purpose of procuring a determination to that effect, but judgment went against him, and he appealed. If at that time the trust company, as it then had the legal right to do, had sold the certificates of stock, and applied the proceeds to the payment of its debt, using the money realized in its business, would the receiver of Burrows' estate, upon subsequently obtaining a reversal, and a judgment in his favor, have been entitled, as against the receiver of the trust company, to a preference over all other creditors? Such a judgment would eventually entitle the receiver of Burrows to a return of the stock, or, in case it was sold, to its value. In such a transaction it could not be held that there was any trust relation, or that the trust company acted as bailee for Burrows, but, as we have seen, it was claiming in hostility with respect to securities which it held in pledge for a debt due it; and the judgment, when rendered, and before it was reversed, decreed that it was entitled to sell the stock, and apply the proceeds to the payment of its debt. I think that in such a transaction, the certificates having been sold, and the money applied in discharge of the debt due the trust company, and the money realized mixed with its general funds, and used in its ordinary business, where, as shown, there was no fiduciary relation, and no relation, as between the Burrows estate and the trust company, of bailor and bailee, the remedy of Burrows' receiver upon obtaining the judgment in his favor would be a right to have a return of the stock, or its value if sold. And the claim thus arising would place the receiver of Burrows in the category of a general creditor, and would not create any such fiduciary relation as would entitle him to a preference over all other general creditors. If this view of the original relation between the parties is right, I do not see how it is in any way changed by the stipulation which merely substituted the money for the stock. The stipulation provides that the

cash shall be held by the trust company subject to the same lien, if any, that it may be ultimately decided in the suit that the trust company has in the stock; and that, if the plaintiff shall obtain a judgment determining that he is entitled to the stock, then the trust company shall return the cash.   There is no agreement that the money shall be retained in specie, but simply that, after recovery of a judgment by plaintiff, the money shall be returned upon demand.   No force can be attached to the provision that the money shall be subject to the same lien as the stock, because this provision was in the interest of the trust company, and was inserted, not for the protection of the receiver of Burrows, but as recognizing the lien which the trust company claimed; and it was proper that it should provide that the money deposited in lieu of the stock should be subject to the same rights as the trust company had to the stock.   I fail to see how a deposit thus made is any stronger than that of the ordinary depositor in a trust company, because in the latter case the trust company agrees to pay back the money on demand without any preliminary process of litigation, whereas, under the stipulation, the money deposited by Moore was to be repaid only if he could succeed in establishing his right thereto by litigation.   But, even if we should regard the stipulation as constituting the petitioner a trust creditor, this would not entitle him to a preference.   As said in Cavin v. Gleason, 105 N. Y. 262, 11 N. E. 504:

"Upon an accounting in bankruptcy or insolvency a trust creditor is not entitled to a preference over general creditors of the insolvent, merely on the ground of the nature of his claim; that is, that he is a trust creditor, as distinguished from a general creditor. * * * The equitable doctrine that, as between creditors, equality is equity, admits, so far as we know, of no exception founded on the greater supposed sacredness of one debt, or that it arose out of a violation of duty, or that its loss involves greater apparent hardship in one case than another, unless it appears in addition that there is some specific recognized equity founded on some agreement, or the relation of the debt to the assigned property, which entitles the claimant according to equitable principles to preferential payment. If it appears that the trust property specifically belonging to the trust is included in the assets, the court, doubtless, may order it to be restored to the trust."

In that case also we find an answer to the suggestion made that this amount should be preferred before other claims because the funds and assets which came to the possession of Simmons were increased by the amount of the moneys in controversy, and that by reason of them he received that amount more than he otherwise would.   As therein said:   "In a very general sense, all creditors of an insolvent may be supposed to have contributed to the assets which constitute the residuum of his estate."   I think the principle of that case sustains the appellant's view, that upon whatever terms the stock or the money might have been received, even if it were the fact that the trust company had wholly converted or misapplied the same, still that alone would not give the debt so arising a preference over other indebtedness of the trust company.   In order to secure a preference, it would be necessary to show in addition that some part of the proceeds arising from such action was in the hands of the trust company when Mr. Simmons was appointed receiver, and then the pref-

erence would not extend beyond the amount of such proceeds actually coming into the receiver's possession.

I do not think that the petitioner's right to relief can be predicated upon the second ground, namely, the terms of the charter of the trust company, that "debts due from the company as trustee and guardian, receiver, or depositary of moneys in court * * * shall have a preference." Regarding the manner in which the deposit was made, we do not think it constituted the company "a depositary of moneys in court." That provision covers cases in which the company is intrusted as an officer of the court, acting in a fiduciary capacity, with the property of others, and can have no reference to a case where, acting in its own behalf, it accepts security for a debt which it claims to be due to it.

I am of opinion, therefore, that the order directing a preference was erroneous, and should be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs.